[No. 9326.   Department Two. — July 19, 1886.]

F. M. PFISTER, APPELLANT, v. THE CENTRAL PA-
CIFIC RAILROAD COMPANY, RESPONDENT.

COMMON CARRIER — LUGGAGE. — The term "luggage," as used in the Civil
Code, has the same meaning as the word "baggage."

ID. — MONEY WHEN NOT LUGGAGE. — Under section 2181 of the Civil Code,
money belonging to a passenger on a railroad, and intended for trade,
business, investment, or transportation, and not for the use of the pas-
senger while traveling, is not luggage.

ID. — RAILROAD — PASSENGER — CONTRACT IMPLIED BY TICKET. — A railroad
ticket entitling the purchaser to transportation in the first-class passen-
ger-coaches of the seller between the points indicated thereon gives him
a right to have his luggage — not exceeding the quantity specified in the
ticket — transported at the same time free of charge; but it does not
give the purchaser a right to travel in a baggage, express, or freight car,
or to transport, either in his own charge or that of the railroad, any
merchandise or property not included in the term "luggage."

ID. — COUNTY TREASURER — CANNOT CARRY MONEY AS A PASSENGER. — A
county treasurer who purchases a railroad ticket entitling him to first-
class passenger transportation has no right to carry with him in a pas-
senger train certain money which he is required by law to pay over to
the state treasurer at the place of destination, although the railroad had
for many years previously acquiesced in such a practice, and accepted
him as a passenger with knowledge that he had the money with him.

ID. — COUNTY TREASURER NOT A PUBLIC MESSENGER. — A county treasurer
traveling with money which he is obliged by law to pay into the state
treasury is not a public messenger within the meaning of the act of
April 4, 1864, requiring the Central Pacific Railroad to carry such mes-
sengers over their road free of charge.

ID. — DUTY OF CARRIER AS TO ACCEPTING AND CARRYING. — Under section
2169 of the Civil Code, a common carrier of goods is under no obligation
to accept and carry all personal property that may be offered.   Its duty
is confined to accepting and carrying property of a kind that it under-
takes or is accustomed to carry.

ID. — EXPRESS FACILITIES — RAILROAD NEED NOT FURNISH TO ALL. — In the
absence of a usage to that effect, or of some statute requiring them so to
do, it is not the duty of railroad companies to furnish facilities for the
transportation of express matter to all alike who demand them.

APPEAL from a judgment of the Superior Court of
Santa Clara County.

The facts are stated in the opinion.

J. J. Burt, for Appellant.

*W. H. L. Barnes*, for Respondent.

Searls, C. — This is an action to recover from the defendant, a corporation, engaged in the business of a common carrier of passengers and freight for hire by cars drawn over a railroad by steam-engines, damages in the sum of fifty thousand dollars for refusal to carry certain treasure for plaintiff.

Defendant interposed a demurrer to the complaint, which was sustained by the court, and judgment, upon refusal by plaintiff to amend, was entered in favor of defendant, from which judgment this appeal is taken.

It appears from the complaint that the plaintiff was the county treasurer of the county of Santa Clara, and as such it was his duty to pay over and deliver to the state treasurer at Sacramento, California, certain funds due the state from him as such county treasurer.

On the nineteenth day of January, 1883, plaintiff purchased from the defendant at San José, in the county of Santa Clara, for sixteen dollars, four first-class passenger tickets, entitling four persons to first-class passage from said San José to Sacramento. Furnished with these tickets, plaintiff and three employees, having with them $91,952 in gold coin of the United States, contained in small leather satchels, which they carried in their hands, boarded a passenger train of defendant with such treasure, and were permitted by the conductor, who had knowledge of the contents of the satchels, to retain possession of and carry the same as far as Niles, a way-station on the railroad leading to Sacramento, where it became necessary to change cars and take another train for the latter place.

The conductor of the train from Niles refused to permit plaintiff and his employees to enter the passenger-car with their treasure, and required plaintiff, if he desired to carry said money to Sacramento, to deliver the same to Wells, Fargo & Co., an express company, en-

gaged as common carriers for hire in the business of carrying treasure and that class of goods known as "express matter" over the railroad of defendant from San José to Sacramento, and to which company defendant had given the exclusive privilege of carrying money upon its trains from San José to Sacramento, so far as such money exceeded such sums as might be carried by a passenger traveling on its trains.

Defendant had provided accommodations for Wells, Fargo & Co. in a baggage-car, had not provided any special cars for persons generally having money to carry to Sacramento, and all such persons, under the rules and regulations of defendant, were obliged to give up to Wells, Fargo & Co., for transportation, all money outside of that which they could carry as passengers.

Plaintiff at first refused to surrender his money to Wells, Fargo & Co., and insisted that he and his employees had a right to go into some car of the train without any extra charge for carrying the money, beyond their regular passenger fare, but at the same time told the conductor that rather than be left at Niles or give up the custody of his treasure to Wells, Fargo & Co., he would go into the baggage or any other car of defendant which might be designated, and would pay to defendant any charges which might be exacted for the transportation of the money, all of which was refused; and plaintiff thereupon, to avoid being left at Niles, delivered the money to the express company for transportation to Sacramento, paying for such transportation the sum of $68.95.

The money which plaintiff was carrying was funds which he, as county treasurer, had received, and was conveying to Sacramento to pay over to the state treasurer, being due from him in his official capacity to the state of California, and his employees were taken along as guards of said money and to aid in carrying the same, all of which was known to defendant.

It had been the custom of the defendant for ten years prior to January 19, 1883, to permit the county treasurer to carry like money in like satchels upon its passenger trains free of charge, and no notice was given to plaintiff of any change in such custom.

At the date when said money was carried to Sacramento, the defendant did not receive and transport money as freight; did not permit persons to travel on its freight trains and carry money as freight; would not check and carry the same as baggage on its passenger trains; and would not have received said money for transportation as freight, baggage, or otherwise; and the only way by which the plaintiff could have transported his money to Sacramento by said railroad was by carrying it himself or by delivering it to Wells, Fargo & Co. for transportation, as required by defendant.

The complaint further proceeds to show, in apt language, that the defendant is subject to, bound by, and by express agreement duly filed has accepted and is bound to execute on its part the duties and discharge the obligations imposed by an act of the legislature of the state of California, approved April 4, 1864, entitled "An act to aid the construction of the Central Pacific Railroad, and to secure the use of the same to this state for military and other purposes, and other matters relating thereto," and showing that the railroad from San José to Sacramento is a portion of the railroad to which said act of the legislature is applicable.

The defendant was a common carrier of passengers and freight between San José and Sacramento, and upon receiving the reasonable and customary payment therefor, it was its duty to receive and carry upon its passenger trains all persons desiring to travel thereby, with a reasonable amount of luggage for each passenger without charge, except for an excess of weight over one hundred pounds. (Civ. Code, sec. 2180.) "Luggage may consist of any articles intended for the use of a passenger while

traveling or for his personal equipment." (Civ. Code, sec. 2181.)

"The liability of a carrier for luggage received by him with a passenger is the same as that of a common carrier of property." (Civ. Code, sec. 2182.)

A common carrier by railroad must check and carry in a reguler baggage-car the luggage of passengers over his road, and must deliver such luggage immediately upon the arrival of the passenger at his destination; and whenever passengers neglect or refuse to have their luggage so checked and transported, it is carried at their own risk. (Civ. Code, sec. 2183.)

The question of whether money can or cannot be treated as luggage has been frequently determined by the courts, and usually to the effect that, except as to such limited amount as may be necessary for personal use to defray expenses of the passenger, it is not luggage. (*Orange Co. Bank* v. *Brown*, 9 Wend. 85; S. C., 24 Am. Dec. 129; *Pardee* v. *Drew*, 25 Wend. 459; *Miss. Cen. R. R. Co.* v. *Kennedy*, 41 Miss. 671; *Smith* v. *Boston & Maine R. R.*, 44 N. H. 325; *Cin. & Chicago Air Line R. R.* v. *Marcus*, 38 Ill. 219; *M. S. & N. I. R. R. Co.* v. *Oehm*, 56 Ill. 293; *Jordan* v. *Fall River R. R. Co.*, 5 Cush. 69; S. C., 51 Am. Dec. 44; *Hawkins* v. *Hoffman*, 6 Hill, 586; S. C., 41 Am. Dec. 767; *Hickox* v. *Naugatuck R. R. Co.*, 31 Conn. 281; *Hutchings* v. *Western etc. R. R. Co.*, 25 Ga. 61; S. C., 71 Am. Dec. 156.)

Some of the cases cited *supra* hold that neither money nor merchandise are included in the term "baggage." We do not find it necessary, however, to decide that precise point in this case. The terms "baggage" and "luggage" signify one and the same thing.

The former is the term in general use in the United States, while in England the latter prevails. Our code has adopted the English expression.

We think it clear, alike from section 2181 of the Civil Code and from adjudicated cases, that money intended

for trade or business or investment, or, as in this case, for transportation, and not intended for the use of the passenger while traveling, *is not luggage.*

It follows that plaintiff and his employees had no right to transport as *luggage* the money in question upon the passenger and express train of defendant.

The right of plaintiff as a passenger must be determined by the contract he made with defendant.

He purchased four first-class passenger tickets from San José to Sacramento, which entitled him and his three employees to transportation in the first-class passenger-coaches of defendant between the points indicated, and gave to them a right to have their luggage, not exceeding one hundred pounds to each person, transported at the same time free of charge.

It gave to them no right to travel in a baggage, express, or freight car, but in the regular passenger-car or cars of the defendant, and the contract gave to them no right to transport, either in their own charge or that of the defendant, any merchandise, or property not included in the term " luggage."

The law takes no note of what property a passenger carries upon his person, but beyond this he may not by virtue of his contract for passage carry either free of charge or by paying an extra charge property not included within the import of the term " luggage."

Were it otherwise, it would be within the power of the passenger to convert the passenger-coaches of a railroad company into vans for the transportation of merchandise, or to compel the carrier to do much the same thing by furnishing baggage-cars for the conduct of ordinary freight.

The orderly and expeditious transit of passengers and their baggage renders it necessary and proper for the carriers engaged in their transportation to run separate trains for their accommodation, or at least to furnish and transport them in cars separate from those devoted to the

carriage of freight; and this result can only be accomplished by requiring the carrier on the one hand, and the passenger upon the other, to refrain from making passenger-cars the receptacle for merchandise.

Plaintiff must be presumed to know the legal effect of the contract he had made, and to be subject to its terms, conditions, and limitations equally with the defendant.

The fact that for ten years the defendant had permitted the county treasurers of Santa Clara County to carry with them upon its passenger trains the money which they were by law required to pay over to the state treasurer neither enlarged nor abridged the contract between it and plaintiff.

If defendant was not legally bound to extend this favor, its liberality to others or to plaintiff himself could not be urged as a binding rule for the continuance of such practice.

The theory of plaintiff, that by having accepted him as a passenger with knowledge of the money he had with him the defendant became a common carrier of him and his money, though he retained possession of the latter, is not sustained by the authorities cited. *Minter* v. *Pacific R. R.*, 41 Mo. 504; *Butler* v. *Hudson R. R. R. Co.*, 3 E. D. Smith, 571; *Stoneman* v. *Erie R. R. Co.*, 52 N. Y. 429; *Sloman* v. *G. W. R. Co.*, 67 N. Y. 208; and *Hannibal R. R. Co.* v. *Swift*, 12 Wall. 262,—were all cases in which the property was delivered to the carrier, and although not baggage, it was held that, having received it with knowledge that it was not the ordinary traveling baggage of the passenger, the liability of a common carrier attached.

We are clearly of opinion that the defendant was under no obligation by virtue of its contract of passage with plaintiff as an individual to permit him to carry with him in its passenger-car the sum of money indicated in the manner indicated, and weighing, as it must have done, between three hundred and four hundred pounds.

Whether independent of contract the defendant was or was not, as a common carrier, in duty bound to receive and transport the money of the plaintiff depends upon other considerations affecting such duty, and will be considered hereafter.

But appellant contends:—

2. That if as a private citizen the treatment of plaintiff would have been right, still, as the treasurer of the county of Santa Clara, with money belonging to the state, to be paid into the state treasury, he occupied a different position, and was as such treasurer entitled to take the money to Sacramento, the capital of the state and official residence of the state treasurer.

As county treasurer, it was his duty to safely keep the public funds in his custody, and at stated intervals to settle with the controller, and to pay over in cash to the state treasurer the sum found due to the state. This duty presupposes the necessity of a visit in person at Sacramento and the delivery there of the amount due the state, and the county treasurer is responsible personally and upon his official bond until the money is so paid.

The defendant, if within the purview of the act of April 4, 1864, and under the allegations of the complaint, which are to be taken as true, we shall so regard it, was bound, in consideration of certain obligations assumed by the state of California, and of certain privileges extended to it to "transport and convey over their said railroad all public messengers, convicts going to the state prison, lunatics going to the state insane asylum, materials for the construction of the state capital building, articles intended for public exhibition at the fairs of the State Agricultural Society, and in case of war, invasion, or insurrection, as well as at all other times, also transport and convey over their said railroad all troops and munitions of war belonging to the state of California free of charge, and without any other compensation than as herein provided." (Stats. 1863–64, p. 344.) If

plaintiff was entitled to a free passage or to carry the money in question under this law, it must have been because he was a *public messenger*.

A messenger is defined by Webster to be "one who bears a message or an errand; the bearer of a verbal or written communication, notice, or invitation from one person to another or to a public body; an office servant."

The term, by its fair import and significance, does not apply to a public officer acting in an original capacity in the discharge of duties imposed upon him by law, but presupposes a superior in authority whose servant the messenger is and whose mandate he executes, not as a deputy, with power to discriminate and judge, or to bind his superior, but as a mere bearer and communicator of the will of his superior.

If a county treasurer is to be treated as a public messenger, we see no good reason why legislators and state officers, having enjoined upon them duties requiring their presence at the state capital, may not with equal propriety be entitled to free conduct as "public messengers."

Under the nineteenth section of the twelfth article of our state constitution, "no railroad or other transportation company shall grant free passes, or passes or tickets at a discount, to any person holding an office of honor, trust, or profit in this state, and the acceptance of any such pass or ticket by a member of the legislature, or any public officer other than railroad commissioner, shall work a forfeiture of his office."

We do not think the term "public messenger," as used in the act in question, applied to or conferred any rights upon the plaintiff as county treasurer of the county of Santa Clara.

It only remains to inquire whether or not defendant, as a common carrier, was derelict in duty in refusing to permit plaintiff, upon offer of compensation therefor, to carry his money in the baggage-car as freight, he retain-

ing the custody thereof, such car being used by Wells, Fargo & Co. as a receptacle for its express matter by consent of the defendant.

Defendant was, at the date of the alleged refusal, according to the averments of the complaint, "engaged in and carrying on the business of a common carrier of passengers and freight for hire, by cars," etc., " over its railroad."

"A common carrier must, if able to do so, accept and carry whatever is offered to him at a reasonable time and place of a kind that he undertakes or is accustomed to carry." (Civ. Code, sec. 2169.)

"A common carrier must not give preference, in time, price, or otherwise, to one person over another," etc. (Civ. Code, sec. 2170.)

A common carrier of goods is not under obligation to accept and carry all personal property that may be offered. That class of carriers known as transfer companies, engaged in receiving and transferring the baggage of passengers to and from public conveyances by land and water, are under no obligation to accept and carry ordinary merchandise. A parcel-delivery express company need not receive and deliver hay, lumber, or other articles too bulky, heavy, or otherwise inconvenient to handle and transfer by its usual facilities.

In other words, the duty of the carrier is confined, as is provided by our code, to accepting and carrying property " *of a kind that he undertakes or is accustomed to carry.*"

The defendant did not undertake — that is to say, did not promise or agree — to carry defendant's money; indeed, it was not asked to do so, except to permit the plaintiff to retain charge of and carry it in the car, and there is nothing in the complaint showing or tending to show that defendant was *accustomed to carry, or ever did carry, or offer to carry,* money as freight or baggage; on the contrary, the express averments of the complaint are to the effect "that the defendant has always refused to

receive money as freight for transportation" over this route, or to allow any person to travel and carry money on its freight-cars, or to check and carry money as baggage on its passenger-cars.

The problem is therefore practically narrowed to a consideration of this question:—

Defendant had accorded to Wells, Fargo & Co. the privilege of carrying in its baggage-car property of the same kind with that possessed by the plaintiff, and of retaining possession thereof while in transit.

Under the circumstances presented by the complaint, was it the duty of defendant to extend like facilities to the plaintiff?

The express business, as understood and carried on in the United States, is said to have been inaugurated by Alvin Adams in the year 1839. It at first involved the carriage of small packages of value between important cities, and proving convenient to the public and remunerative to those engaged in the business, it gradually expanded in volume and importance, until upon all the great thoroughfares of the country, whether by land or water, one or more companies was to be found engaged in the receipt, carriage, and delivery of property varied in character, and including that of great value in small compass, articles requiring special care to protect them from injury or theft, perishable goods requiring speedy transit and immediate delivery, and a variety of others, all known as "express matter."

The business has continued to increase until it has become a prime factor in satisfying the wants of advancing civilization, and has demanded and received from transportation companies the facilities essential to its importance and successful execution. Among these are the allotment of express-cars, and space in baggage-cars attached to passenger trains, for the speedy transportation of this class of freight by railroad companies, and the transportation of messengers, the employees of the

express companies, in whose custody and possession the property is retained during transit.

The duties of railroad carriers are confined to the receipt, carriage, and delivery of such freights as are appropriate to such a mode of transportation, and in the absence of same special provision in their charter or in the law under which they are organized, railroad companies are not bound as carriers of property to receive and carry money, gold or silver bullion, bonds, bank notes, jewelry, valuable papers, or other property not appropriate to the mode of transportation in vogue by such companies. (*Southern Ex. Co.* v. *Nashville R'y Co.*, 20 Am. Law Reg. 596.)

Doubtless, the growth and expansion of the express business is largely due to the fact that its successful conduct calls for the exercise of powers and furnishing of facilities not possessed in any ample degree by railroad carriers.

Be this as it may, the express business, as was said in *Southern Ex. Co.* v. *Nashville R'y Co.*, 20 Am. Law Reg. 598, "is only second in importance to railroad transportation; and that the express business has so interwoven itself into the present methods that it cannot be dispensed with without producing an abrupt and disastrous revulsion in the present mode of carrying on trade. It has grown into immense proportions, and has become a necessity. . . . . It has attained its present enlarged usefulness under the fostering care of the railroads themselves. . . . .

"The right of the public to have quick, reliable, and safe carriage of goods through expressmen has been recognized for forty years. This general recognition by the public and by railroad corporations, in connection with its admitted utility, stamps it as a legitimate mode of railroad carriage."

The carriage of such freights for express companies is demanded by the wants of the public, and is in the strict line of railroad duty.

An application of the principle which involves the duty of railroad companies to avail themselves of the discoveries of modern science and skill for the safe and speedy transportation of passengers and freight may well require them to so adjust their facilities for accommodating the public that its advancing wants may be supplied, and the mutual interests of all parties may be subserved.

The defendant has recognized and discharged this duty so far as to accord to Wells, Fargo & Co. all necessary facilities for conducting an express business over its railroad.

Having thus provided for the accommodation of the public with express facilities, the contention of defendant is, that the full measure of its duty is discharged, and that to require it to extend to each individual who may apply and be willing to pay therefor like facilities would, owing to the peculiar requirements demanded, be subversive of legitimate trade, impose upon defendant burdens not easily borne, and in no wise benefit individuals demanding such privileges.

It does not appear from the complaint that the sum charged by Wells, Fargo & Co. for the transportation of his money was in excess of the value of the service rendered, or in excess of the sum which might reasonably have been exacted from him by defendant had it permitted him to retain possession of his money, and to travel with it in the baggage-car, devoted in part to express matter.

If, therefore, plaintiff has been injured and damnified, it must be upon the principle that he, in common with all other persons, had a right to possession of his property while in transit, and to all the privileges and facilities extended to the express company for the transportation of like property.

This question was involved in three cases recently presented to the Supreme Court of the United States,

and decided by that tribunal, known as the express cases, and severally entitled: *St. Louis, I. M., & S. R'y Co.* v. *Southern Express Co.; Memphis & L. Rd. Co.* v. *Southern Express Co.;* and *Missouri, K., & T. R'y Co.* v. *Adams Express Co.,* 117 U. S. 1.

These causes were each brought by an express company against a railway company to compel the latter to afford it the same express facilities it had formerly enjoyed under a contract then abrogated.

The several circuit courts from which the cases were appealed had each entered a decree in favor of the express companies, in which it was held, among other things:—

"1. That the express business · . . . . is a branch of the carrying trade, that has by the necessities of commerce and the usages of those engaged in transportation become known and recognized so as to require the court to take notice of the same, as distinct from the ordinary transportation of the large mass of freight usually carried on steamboats and railroads.

"2. That it has become the law and usage and is one of the necessities of the express business that the property confided to an express company for transportation should be kept while in transit in the immediate charge of the messenger or agent of such express company.

"3. That to refuse permission to such messenger or agent to accompany such property on the steamboats or railroads on which it is to be carried, and to deny to him the right to the custody of the property while so carried, would be destructive of the express business, and of the rights which the public have to the use of such steamboats and railroads for the transportation of such property so under the control of such messengers or agents.

"7. That it is the duty of the defendant to afford to the plaintiff all express facilities, and to the same extent

and upon the same trains that said defendant may accord to itself or to any other company or corporation engaged in the conduct of an express business on the defendant's lines, and to afford the same facilities to the plaintiff on all its passenger trains."

The Supreme Court, in the opinion delivered by Chief Justice Waite, reviews the growth and importance of the express business, recognizes the fact that it could not be destroyed without interfering materially with business and the conveniences of social life, refers to the fact that railway companies recognize the right of the public to demand transportation facilities by the railways which the public has permitted to be created of that class of freight known as "express matter," and then proceeds to show the inconveniences that would follow were the railroad companies obliged to furnish express facilities to all applying for them, its interference with passenger traffic, and concludes that "the railroad company performs its whole duty to the public at large and to each individual when it affords the public all reasonable express accommodation.

"If this is done, the railroad company owes no duty to the public as to the particular agencies it shall select for that purpose. The public require the carriage, but the company may choose its own appropriate means of carriage, always provided they are such as to insure reasonable promptness and security." And holds that in the absence of a usage to that effect, or of some statute requiring them so to do, it is not the duty of railroad companies to furnish express facilities to all alike who demand them.

The inconveniences which would follow from requiring railroad companies to extend equal express facilities to all persons, companies, and corporations regularly engaged in the express business would be multiplied beyond measure were they, either with or without previous notice, required to furnish like accommodations to each

individual who might at any time, and for a single trip, see fit to demand them.

Railroad companies owe important duties to the public, the discharge of which in their letter and spirit should be rigorously enforced by every department of the government to which authority in the premises is delegated, but to uphold the claim of plaintiff would establish a principle onerous to railroad companies and at the same time detrimental to the speedy and orderly conduct of a branch of the carrying trade in which the public is most concerned.

We are of opinion the demurrer to plaintiff's complaint was properly sustained, and that the judgment should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT. —For the reasons given in the foregoing opinion, the judgment is affirmed.