CASE 46.—ACTION BY SARAH J. HALL AGAINST THE CHES-
APEAKE & OHIO RAILWAY COMPANY FOR THE
VALUE OF A LOST TRUNK.—January 13, 1910.

## Chesapeake & Ohio Ry. Co. v. Hall

Appeal from Floyd Circuit Court.

D. W. GARDNER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Af-
firmed.

1.  Carriers—Carriage of Freight—Liability.—A carrier of freight
    is an insurer against any loss or damage to the goods, except
    that caused by the act of God, or the public enemy, so that it
    is liable for a larceny by its agent in charge of the freight.
2.  Carriers—Principal and Agent—Carriage of Freight—Liabil-
    ity.—The acts of an agent in procuring carriage of freight
    of his principal are binding on the principal, but the ignor-
    ance of the agent as to the contents of the package delivered
    for shipment, and innocence of any intention to deceive the
    carrier, or to conceal the value of the goods, do not affect the
    liability of the carrier where the principal intended to de-
    ceive the carrier or to conceal the value of the goods.
3.  Carriers—Carriage of Freight—Fraud of Shipper—Effect.—
    Where a shipper, to obtain a lower rate or for any other rea-
    son, gives false information to the carrier as to the contents
    or value of a package delivered for transportation, or at-
    tempts by concealment to deceive the carrier as to the value
    or description of the articles it contains, he cannot recover
    the value of the goods, where the appearance of the package
    is not sufficient to put the carrier on notice as to its contents.
4.  Carriers—Carriage of Freight—Fraud of Shipper—Effect.—A
    shipper of a trunk by freight must notify the agent of the car-
    rier that it contains money, as a carrier need not accept
    money to be shipped as freight, unless it is first notified, so
    that it may charge a rate sufficient to justify it in taking the
    degree of care observed in the transportation of money, not-
    withstanding the Constitution declaring that the common-
    law liability of a carrier shall not be limited.

5.  Carriers—Carriage of Freight—Money.—In the absence of evi-
    dence, the carriage of money is strictly speaking not in the
    line of the duty of a carrier holding himself out only as a
    carrier of goods, wares, and merchandise.
6.  Carriers—Carriage of Passengers—Personal Baggage—Liabil-
    ity.—A carrier of passengers permitting them to carry per-
    sonal baggage is not liable for the loss of an unusual amount
    of money carried as baggage, or for more than might be need-
    ed to defray the usual personal and traveling expenses of the
    passengers.
7.  Carriers—Carriage of Freight—Larceny by Agent—Liability.
    —A carrier receiving a trunk for carriage by freight with-
    out notice that it contains money is liable for the larceny of
    the money by an agent of the carrier in whose immediate
    care the trunk is placed, though the carrier would not have
    been liable if the money had been stolen by a stranger, or had
    been lost by its negligence, or other cause, and though the
    shipper was guilty of the first wrong in failing to notify the
    carrier of the fact that the trunk contained money.

WORTHINGTON, COCHRAN & BROWNING, F. T. D. WAL
LACE, WALTER S. HARKINS and JOSEPH D. HARKINS for
appellant.

MAY & MAY and JAMES GOBLE for appellee.

Opinion of the Court by Judge Carroll—Affirm-
ing.

Sarah J. Hall by her agent delivered to the appel-
lant company at Kenova, W. Va., a trunk to be ship-
ped by it to Harold, Ky. She paid 50 cents in ad-
vance for the transportation by freight of the trunk.
There were no marks on the outside of the trunk to
indicate who owned it, but the agent at Kenova at-
tached to the handle of the trunk a metal check, and
delivered to the agent of the appellee a duplicate. At
the time the trunk was shipped, and when it was re-
ceived at Harold, it was securely locked and in sound
condition. The trunk contained a lot of clothing, and
also $687.50 in money. After the trunk had been at
Harold a few days, and before it was called for, the

agent of the company at that place, under the pretense that he wanted to know who was the owner of the trunk, broke open the lock in the presence of some persons who happened to be present, and ascertained from letters in the trunk the name and address of Mrs. Hall, the owner. Some time afterwards, Mrs. Hall got possession of the trunk, and discovered that the money was missing. Whereupon she brought suit against the company to recover the value of the money. A trial resulted in a judgment in her favor, and the company appeals.

There is no contradiction in the evidence that, when the trunk reached Harold, it was securely locked and in sound condition and contained the money sued for. Nor is there any denial of the fact that the trunk was broken open by the agent. The agent did not testify in the case, and there is no direct evidence that he abstracted the money, but many circumstances not necessary to detail points to him as the guilty person, and there was sufficient evidence to warrant the jury in so finding.

The court instructed the jury that if they believed from the evidence that the trunk contained the money, and that it was taken from the trunk by the agent of the company while the trunk was in his charge as such agent, they should find for Mrs. Hall, and refused upon the request of the company to instruct the jury, first, that if they believed from the evidence "the trunk was such as is generally used to contain things of ordinary personal apparel and of apparently small value, and plaintiff failed to disclose to the defendant company, its officers and agents, the real value of the contents of the trunk, and that the same contained money, they should find for the company;" and, second, "that if they believed

from the evidence that the money was willfully and voluntarily taken from the trunk by the agent, and appropriated by him to his own use, that the company was not liable for his wrongful acts.''

Passing for the present the question that the carrier is not liable because it did not have notice that the trunk contained money, we hold that it will not be permitted to escape liability upon the ground that its agent in breaking open the trunk and abstracting the money committed a crime or acted outside the line of his duty or the scope of his employment. When the carrier accepted the trunk, it assumed the obligation of delivering it to the owner in the condition in which it was when received. In other words, it became an insurer against any loss or damage to the trunk except that caused by the act of God or the public enemy. To hold that a common carrier may be exonerated for loss occasioned to freight, if the loss is caused by the wrongdoing of one of its servants in charge of the freight, would be to establish a rule entirely at variance with all the law on the subject of the duties and liabilities of common carriers, and to announce a doctrine that would leave the shipper defenseless from the acts of the very person into whose absolute care he had intrusted his goods. The shipper has no voice in the selection of these agents, and no control whatever over their habits or conduct. They are selected by the carrier, employed and discharged by it at pleasure, and it owes a duty to the public to see to it that they are honest and faithful in the performance of the services for which they are employed. If they are not, the carrier is answerable in damages for their wrongdoing or misconduct, whether it amounts to a crime or not. The fact that the act is criminal in itself, and subjects the

agent to prosecution, can not lessen the liability of the carrier. It employed and placed him in a position of trust, and the public dealing with it had the right to assume that he was honest. If the trunk while in the custody of the carrier had been broken into by a stranger, and the contents injured or carried away, the carrier as an insurer would undoubtedly be liable, although the act of breaking into the trunk and carrying away the property may have been criminal. As the carrier is liable for the acts of a stranger in injuring or misappropriating goods, we can see no reason why it should escape because the wrong is committed by one of its agents. Its responsibility and liability is the same in the one instance as in the other. In coming to this conclusion we do not find it necessary to inquire into the torts or wrongful acts of the servant that the master will generally not be held liable for, if they are committed by the servant outside the line of his duty or the scope of his employment. The law usually applicable in cases where it is sought to hold the master for the acts of his servant has no place in the consideration of the question we are considering, as the liability of common carriers for loss of property has a separate, distinct, and well-fixed place in the law.

The next question presented is that the carrier is not liable because it had no notice that the trunk contained the money. No inquiry as to its contents was made by the agent to whom the trunk was delivered for shipment, nor can it be said that any intentional concealment of its contents was made by the consignor. The failure of the consignor to inform the agent of the carrier that the trunk contained money was not due to any purpose on his part to practice a deception or obtain a lower rate than would be

charged if its contents had, been known.  In fact, the
consignor seems to have been entirely innocent of any
purpose to deceive or defraud.  He did not know that
the trunk contained  anything like  the  amount of
money that was in it, although he did know that there
was some money in it.  Mrs. Hall, the owner, was in
another state at the time the trunk was shipped, and
merely gave directions to her agent to have it shipped
to. Harold, without telling him how to ship it or in-
forming him  that it contained  a large  amount of
money.  The fact, however, that the trunk was ship-
ped by the agent to Mrs. Hall does not place her in
any better position than if it had been shipped by her
in person as she is bound by what her agent did or
failed to do, and the case must be treated as if the
shipment had been directly made by her.  It would
not do at all to say that if the agent or person actual-
ly attending to the shipment of an article was ignor-
ant of its contents and innocent of any intention to
deceive or defraud, or to  conceal the value of  the
goods, that the carrier would be liable when it would
not be if the goods were shipped by the owner or a
person who did know the nature and value of the con-
tents.  We think this proposition too plain to need
further elaboration.  So  that, if the shipper  was
under any duty to inform the agent of the carrier
that there was money in the trunk, and did not impart
this information to the agent, his failure to do so
must defeat the right of Mrs. Hall to recover, unless
it is saved by the fact that the money was taken by
an agent of the carrier.  It is well settled that if the
shipper for the purpose of obtaining a lower rate, or
indeed for any other reason, gives false or misleading
information to the carrier as to the contents or value
of a package, or attempts by evasion or concealment

to deceive the carrier as to the value or description of the articles it contains, he can not recover the value of the goods or property contained in the shipment that he failed upon inquiry to furnish information concerning, or the value of which he purposely concealed, if the appearance of the package was not sufficient to put the carrier on notice as to its contents. This reasonable rule, introduced and established to enable the carrier of goods to exercise a degree of care commensurate with the value of the property, and to prevent imposition being practiced upon it by the shipper in obtaining a lower rate than would be charged if the real value of the articles shipped were known, is everywhere recognized. Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 711, 37 L. Ed. 587; Shackt v. Illinois Central R. C., 94 Tenn. 658, 30 S. W. 742, 28 L. R. A. 176; Hutchinson on Carriers, sec. 332; 5 Am. & Eng. Ency. of Law 345, 371; Bottom v. Charleston & W. R. Co., 72 S. C. 375, 51 S. E. 985, 2 L. R. A. (N. S.) 773, 110 Am. St. Rep. 610, 5 Am. & Eng. Ann. Cas. 118; 6 Cyc. 380; Story on Bailments, sec. 565.

If, therefore, the agent of the carrier had made inquiry of the shipper, and had been informed that the trunk did not contain money, or if there had been any intentional concealment or fraud practiced by the shipper for the purpose of deceiving or misleading the carrier as to the value of the goods, there would be no difficulty in determining that the carrier was not liable. But, in the absence of evidence of this character, the case comes down to the narrow question whether or not the failure of the consignor to notify the carrier that the trunk contained money relieves the carrier from liability. It may be con-

ceded that the general rule is that the carrier will be liable unless some false representation or statement, either voluntarily or in answer to inquiries, is made as to the value of the goods, or there is an intentional and fraudulent concealment of their value. But this rule should not in fairness be applied when the outward appearance of the article offered for shipment is such that a person of ordinary prudence would not assume or suspect that it contained money. The appearance of the trunk did not itself furnish any information or notice that it contained money, and it is not reasonable to assume that the agent—supposing him to be a man of ordinary prudence—would suspect that its contents were other than articles of wearing apparel, household goods, and the like such, as are usually placed in trunks for shipment. Clearly he could not anticipate that there was in the trunk a large amount of money. The trunk was shipped by freight—a most unusual method of shipping a package containing a large amount of money. Under these circumstances, we are of opinion that the shipper should have notified the agent that the trunk contained money, and that it was not necessary that the agent should have made any inquiry, or that there should have been any fraudulent or intentional concealment by the shipper. As aptly said in Hutchinson on Carriers, sec. 330: "Fraud may be as effectually practiced upon the carrier by silence as by a positive and express misrepresentation. The neglect or failure to disclose the real value of a package, and the nature of its contents, if there be anything in its form, dimensions, or other outward appearance which is calculated to throw the carrier off his guard, whether so designed or not, will be conduct amounting to a fraud upon him. The intention to impose

upon him is not material.  It is enough if such is the
practical effect of the conduct of the shipper, as, if
a box or package, whether designedly or not, is so
disguised  as to cause it to resemble such a box or
package as usually contains articles of little or no
value, whereby the carrier is misled.   For by such
deception the carrier is thrown off his guard and neg-
lects to give the package the care and attention which
he would have given it had he known its actual
value.''   No good reason can be assigned why the
agent should have made any inquiry as to the con-
tents of the trunk.  It was in good condition for ship-
ment, and he had the right to believe that it con-
tained such articles as are usually carried in trunks.
It can not be doubted that, if the agent had known
that there was $687 in money in the trunk, he would,
if it had been accepted for shipment by freight, have
exercised unusual care for its protection from loss,
and charged a much higher rate than was charged
for its transportation, or would have declined to ac-
cept it for shipment by freight, as we think he might
safely have done.  In the absence of evidence to the
contrary, the carriage of money is, strictly speaking,
not in the line of the duty of a carrier who holds him-
self out only as a carrier of goods, wares, and mer-
chandise.

Lee v. Burgess and Graham, 9 Bush, 652, was an
action to recover from a common carrier the value
of money received by it for shipment and lost.  In
considering the case the court said: ''It is not pre-
tended in this case that the carrying of money is
within the ordinary and usual business of a steam-
boat, and, therefore, it will not do to say that be-
cause goods, wares, merchandise, and passengers
are carried on this boat therefore the owners are

common carriers of gold or bank bills. We do not intend to say that one may not be a common carrier of money or bank bills. This liability may be assumed with reference to money as well as ordinary freight; but, where such a liability is sought to be established, it must be shown that the party charged is a common carrier of bank bills, where the carrying of such packages is not within the ordinary business in which the carrier is engaged. Suppose the clerk of this boat had refused to accept the package for delivery upon the appellee's tendering compensation, could the company or the owners have been made liable by reason of such refusal? We think not, and for the reason that it was not within their employment.'' To the same effect is Knox v. Rives, 14 Ala. 249, 48 Am. Dec. 97; Pfister v. Central Pacific R. Co., 70 Cal. 169, 11 Pac. 686, 59 Am. Rep. 404.

In line with these cases, it is generally ruled that a common carrier of passengers that permits them to carry personal baggage is not liable for the loss of an unusual amount of money carried in a trunk or package as baggage, or for more than might be needed to defray the usual personal and traveling expenses of the passengers. Hutchings v. Western & Atlantic R. Co., 25 Ga. 61, 71 Am. Dec. 156; Jordan v. Falls River R. Co., 5 Cush. (Mass.) 69, 51 Am. Dec. 44; Hawkins v. Hoffman, 6 Hill (N. Y.) 586, 41 Am. Dec. 767; Orange County Bank v. Brown, 9 Wend. (N. Y.) 85, 24 Am. Dec. 129; Illinois Central R. Co. v. Matthews, 114 Ky. 973, 72 S. W. 302, 24 Ky. Law Rep. 1766, 6 L. R. A. 846, 102 Am. St. Rep., 316.

We might further add that in these days there would be little reason for holding that a railway common carrier should be required to accept money to be shipped as freight, because there is operated in

connection with almost every such carrier in the country express companies who make a specialty of carrying money and other valuable and small packages. But, whether or not it is the duty of a railway carrier to accept money to be shipped as freight, we are clearly of the opinion that it should not be required to do so unless it is first notified of the value of the money purposed to be shipped, so that it may charge a rate sufficient to justify it in taking that degree of care usually observed in the transportation of money, and that it will not be liable without notice for the loss of money shipped by it as freight. We do not, of course, mean to hold that it is the duty of the shipper in every case to inform the agent, unless inquiry is made, as to the contents or value of the articles shipped. This is only necessary when its contents are altogether different from what one would assume were contained in such a package, as where money or valuable jewelry or the like is put in a trunk or box. If the package presented for shipment contains the kind of goods that are generally or usually sent in such packages, or that a person of ordinary judgment and prudence might assume would be shipped in them, the carrier will be liable for the value of the contents no matter what they are, unless false .or misleading statements as to the contents are made by the shipper, either voluntarily or in response to inquiries, or he fraudulently or intentionally conceals the true value or character of the goods for the purpose of obtaining a lower rate.

In reaching this conclusion, we have not overlooked the fact that the Constitution declares that the common-law liability of a carrier shall not be limited. We have no intention of doing this, but we have found no authority holding that at common law, in

the absence of notice, a carrier would be held responsible for the value of money shipped in a package, the appearance of which did not indicate or give any notice that it contained money. The common-law rule does not authorize either actual or constructive fraud to be practiced upon the carrier, or impose upon it liability greater than it had reason or right to assume it was undertaking when it accepted the shipment. Hutchinson on Carriers, sec. 329.

But the point is further made that, although the reasons stated are sound and would be applicable if the trunk had been lost by negligence or the money stolen by a stranger, as it was taken by an agent of the carrier, it can not claim exemption. The argument in support of this proposition is that the agent represented the carrier and in the eye of the law was the carrier, and hence as the money was taken by the agent to whose care the goods were committed, it can not excuse itself on the ground that it had no notice of the contents of the trunk, as it did have such notice when the money was taken, and must be held liable for its own individual wrong. If the carrier or its agent into whose custody the trunk came did not have notice of the fact that it contained money, the carrier will not be liable. But here the agent of the carrier in whose immediate care the trunk was placed did have notice that there was money in the trunk, and after such notice did abstract it. We, therefore, think that the commission of the theft by its agent is sufficient to hold the carrier, although it would not have been liable if the money had been taken by a stranger or had been lost by its negligence or other cause. When the agent took the money, it was the carrier itself taking it. When the agent discovered that there was money in the trunk,

it was his duty to have protected it, or at least to have exercised care to do so.

Nor can' his wrongdoing be excused upon the ground that the shipper himself was guilty of the first wrong. Whatever wrong the shipper is chargeable with can not save the carrier from the tort of its own agent after he had notice of the fact that there was money in the trunk. It is upon this ground alone that we hold the carrier liable.

Wherefore, the judgment of the lower court is affirmed.