GALVESTON, H. & S. A. RY. CO. v. QUILHOT.

(Court of Civil Appeals of Texas. Jan. 18, 1911. Rehearing Denied Feb. 15, 1911.)

1. CARRIERS (§ 110*) — FREIGHT — NOTICE — CHARACTER OF GOODS.

If the packages in which freight is presented to the carrier, or the marks thereon, mislead it to believe that the freight is ordinary freight instead of goods of exceptional value, and the shipper does not notify the carrier of the character of the goods, the carrier is not liable for their exceptional value if lost.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 498; Dec. Dig. § 110.*]

2. CARRIERS (§ 134*) — FREIGHT — ACTIONS — SUFFICIENCY OF EVIDENCE—CHARACTER OF GOODS—CARRIER'S KNOWLEDGE.

In an action for loss of silverware and china en route which were shipped, packed in a box and barrel, evidence *held* to sustain a finding that the railroad company's agent was not misled as to the character or value of the goods by any statement of the shipper, or by the nature of the packages or the markings thereon.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 134.*]

3. CARRIERS (§ 110*) — FREIGHT — NOTICE OF CONTENTS—NECESSITY.

The shipment of silverware and expensive china in a box and barrel is not so unusual nor is their value so extraordinary as to require the shipper as a matter of law to give notice to the carrier of their nature and value in absence of a request for such information, in order to recover for their loss en route.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 498; Dec. Dig. § 110.*]

Appeal from Guadalupe County Court; H. M. Wurzbach, Judge.

Action by W. Quilhot against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Dibréll & Mosheim, and J. S. McEachin, for appellant. Seidemann & Short, for appellee.

JAMES, C. J. The case was previously before us on appeal. 123 S. W. 200. In two respects the statement of facts is said to be different from what it was in that case.

Appellant shows that the station agent, Griffin, testified at the late trial that he prepared the bill of lading, and that he got his information as to the contents of the box and barrel either from the agent of appellee, who delivered same for shipment, or from the marks on the packages, and that this testimony was not in the former record.

Also, that another fact was shown which was not in the former record, to wit, the testimony of Mrs. Abbott, who stated that she made inquiry as to the cost of the shipment, and ascertained that to send it by express was much higher than by freight, and after ascertaining this she delivered the goods to Krezdorn, a jeweler, with instructions to ship same as if it were his own property, and that in this connection the fact that the silverware was placed by the jeweler in a box in which he had previously received clocks, and which was marked "Clocks," and that the hand-painted china and other exceptionally valuable articles of like class were placed in a barrel upon which was marked "Glass," which, according to the testimony, meant common glass, was significant of an endeavor on the part of appellee's agent to ship such valuable articles as ordinary glass and clocks.

The result of the trial was a judgment for plaintiff rendered by the court, sitting without a jury. The only matter contended for is that the judgment should have been for defendant on the evidence. We find the substance of the testimony, in so far as it is in support of the judgment, to be as follows:

Mrs. Abbott desired to ship a lot of silverware and expensive china, which were wedding gifts, to her daughter, Mrs. Quilhot. She was informed that it would be less expensive to send same by freight than by express, and delivered them to Mr. Krezdorn, a jeweler, to ship for her. Krezdorn packed them in a box and barrel, which he had on hand, the former bearing the mark "Clocks" and the latter "Glass," nailed them up, and addressed same to Mr. William Quilhot, Amsterdam, N. Y., and sent same by the street railway company to the depot, the person by whom he sent them being Willis Sheffield, and to the best of Krezdorn's recollection he gave Sheffield no other instructions than to get the bill of lading and bring it back. Sheffield delivered same and brought back the bill of lading which showed "list of articles: one box Glass, one bbl. clocks"; "contents and value unknown." The shipment was never delivered, but was lost. In the bill of lading was a provision that correct weight and classification are to be ascertained and collected at destination, and that the same was given subject to correction as to rate, weight, and classification, so as to conform to the commission rules. Krezdorn testified that he had received such goods sent to him by freight.

The evidence does not clearly show a case of intentional deceit on the part of Mrs. Abbott or her agent, Krezdorn. But, according to the authorities, this would make no difference in the result, if the packages were presented to the carrier in such form, by marks or otherwise, as to be calculated to lead, and

do lead, the carrier to receive them as ordinary freight, instead of articles of exceptional value, requiring a higher rate and greater care. If, under such circumstances, the carrier acts upon the appearance of the packages, calculated to mislead it, the law is well settled that it is not liable for the loss of the packages. The testimony in this record is not such as to show conclusively that defendant's agent was in fact influenced by the marks on the packages in accepting the same and giving the bill of lading. The bill of lading he issued described the contents as unknown. If he actually understood that the contents consisted of clocks and ordinary glassware, he would naturally not have referred to same as unknown. The box and barrel had previously been used and had the marks "Glass" and "Clocks" already upon them. It may have been evident from their appearance that these marks had not been placed there to designate the contents of these packages, and that this is why he stated the contents as unknown.

The case is not materially different upon the facts from what it was when here before. In the former opinion we stated: "There was no evidence of anything done by the shipper of the property to deceive appellant as to the contents of the box and barrel tendered to it for shipment. The marks upon them were put there to indicate their former contents, and the agent did not testify that he was misled by them; and it would seem from his testimony that he paid very little attention to the shipment anyway. It was stated in the bill of lading that the contents of the box and barrel were unknown as well as their value. There was no evidence whatever tending to show that appellant was led to believe that the property was of less value than that claimed for it."

The agent, Griffin, on this trial testified that he got his information as to the contents of the shipment either from the person who delivered the shipment or from the marks on the barrel and box. The testimony of Sheffield tends to the contrary so far as he was concerned. The recital in the bill of lading, "contents unknown," tends to negative, if it does not entirely negative, the fact that he acquired information of the contents from any source.

It was competent for the trial judge in considering the testimony to arrive at the conclusion that no intention to deceive existed for any purpose on the part of the shipper or her agent, Krezdorn; that defendant's agent was not in fact misled by anything that was represented by the shipper or her agent, nor by the condition, or markings upon the packages, into accepting the same for transportation, and fixing the charges.

The case as it exists in this record is not materially different from what it would have been had the aforesaid marks not been on the packages, it appearing that the agent did not act upon such markings, and was not deceived thereby. Suppose the box and barrel had no marks, and was accepted, as it was in this instance, without question and evidently without any special attention given the matter of their contents and value, were the contents of such a nature as made it the duty of the shipper to give the carrier notice of the same? This, it seems, would be true if money was being shipped in a trunk or package which would not of itself be calculated to convey notice of the fact. Hutchinson on Carriers (3d Ed.) §§ 331, 332. It is probable that the rule will apply as well to rare or costly articles of exceptional value shipped in such manner. A well-considered case on the subject is Chesapeake & O. Ry. Co. v. Hall by the Supreme Court of Kentucky, 136 Ky. 389, 124 S. W. 375, which sums up the shipper's duty to notify in this language: "We do not mean to hold that it is the duty of the shipper in every case to inform the agent, unless inquiry is made as to the contents and value of the article shipped. This is only necessary when the contents are altogether different from what one would assume were contained in such a package, as where money, or valuable jewelry is put in a trunk or box. If the package presented for shipment contains the kind of goods that are generally or usually sent in such packages, or that a person of ordinary prudence might assume would be shipped in them, the carrier will be liable for the value of the contents no matter what they are, unless false or misleading statements as to the contents are made by the shipper, either voluntarily, or in response to inquiries, or he fraudulently or intentionally conceals the true value or character of the goods for the purpose of obtaining a lower rate."

It is manifest that a person of ordinary judgment and experience, would naturally assume that any kind of crockery or even silverware that is now in almost universal use, and which have become common articles of commerce, would be received for shipment as freight in the ordinary way. Krezdorn testified that he had received such goods shipped as freight. Their value is not so exceptional and extraordinary as to suggest any different view, so as to require the shipper, as a matter of law, to give notice to the carrier of their nature and value, unless the information is asked of him.

The judgment is affirmed.