143 So. 574

## LIFE & CASUALTY INS. CO. OF TENNESSEE v. BOTTOMS.

### 6 Div. 125.

Supreme Court of Alabama.
Oct. 6, 1932.

Huey, Welch & Stone, of Bessemer, for appellant.

McEniry & McEniry, of Bessemer, for appellee.

GARDNER, J.

James H. Bottoms, while riding in a motorcycle on the streets of Bessemer, Ala., was

killed by collision of an automobile with the motorcycle. He had accident insurance in force at the time in what is designated as "Industrial Travel and Pedestrian Policy," and this suit is by his widow, the named beneficiary in said policy, to recover thereon.

There are numerous assignments of error, but stripped of all superfluous matter and reduced to the last analysis, there is but a single meritorious inquiry presented, decisive however of this appeal, and the discussion of which may be brought within a narrow compass. Plaintiff relies for recovery upon the following clause in the policy: "Subject to all its terms and conditions, this policy is extended to cover a telegraph or other messenger boy, if injured on the street while attending to his duties of his employment, whether standing still, walking or riding, and also extended to cover truck driver, taxicab drivers, street car motormen and street car conductors, when engaged in the line of their employment, in actually driving or operating a public conveyance."

The complaint alleges, and it is insisted the proof tends to show, that the insured was a "messenger boy" within the meaning of the foregoing provisions of the policy, and, accepting this theory, the trial court submitted the question for the jury's determination and refused the affirmative charge requested by the defendant. This presents the pivotal question in the case.

We feel constrained to a view contrary to that entertained in the court below. This court has repeatedly given application to the liberal rule of construction in favor of the insured of insurance policies in case of any ambiguity, but with equal consistency our holding has been that when the language is unambiguous, and but one reasonable construction of the contract is possible, it must be expounded as made, for the courts are not at liberty to make new contracts for the parties. New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547, and authorities therein cited.

Like thought is differently expressed in Home Loan & Finance Co. v. Fireman's Fund Ins. Co., 221 Ala. 529, 129 So. 470, 471, in the following language: "The true intent governs insurance contracts the same as others. While doubtful terms are construed in favor of the insured, no strained construction should be indulged to raise doubt."

And in considering the proper interpretation of the words "messenger boy," in the above noted clause, we should not overlook the ancient maxim, noscitur a sociis, the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it (somewhat broader in its scope than the kindred maxim ejusdem generis), and which was of controlling influence in the recent case of Louis Pizitz Dry Goods

Co. v. Fidelity & Deposit Co., 223 Ala. 385, 136 So. 800. The language is "telegraph or other messenger boy," and under this well-known maxim the words "messenger boy" must be held to take color from and be interpreted in connection with the word "telegraph" with which they are thus so closely associated. The court may take judicial cognizance of the functions and duties in a general sense of a telegraph messenger boy, as they may be said to form a part of the common knowledge of every person of ordinary understanding and intelligence. 23 Corpus Juris 59.

In Pfister v. Central Pacific R. Co., 70 Cal. 169, 11 P. 686, 690, 59 Am. Rep. 404, the California court considered the words "public messenger," and while not therefore here directly in point, yet the definition therein found suffices, we think, to also demonstrate the general character of duties of a telegraph messenger as follows: "A 'messenger' is defined by Webster to be 'one who bears a message or an errand; the bearer of a verbal or written communication, notice, or invitation from one person to another, or to a public body; an office servant.'" The term, by its fair import and significance, does not apply to a public officer acting in an original capacity in the discharge of duties imposed upon him by law, "but presupposes a superior in authority, whose servant the messenger is, and whose mandate he executes, not as a deputy, with power to discriminate and judge, or to bind his superior, but as a mere bearer and communicator of the will of his superior." See, also, 40 Corpus Juris 6523. Interpreted, therefore, in the light of the connection in which they are used, the words "or other messenger boy" must be held to have a meaning within the sphere of the foregoing definition, and to "presuppose a superior in authority whose servant the messenger is and whose mandate he executes, not as a deputy, * * * but as a mere bearer and communicator of the will of his superior."

A brief reference to the testimony will, we think, suffice to demonstrate the insured was not within this class. Insured was in the employ of one S. P. Keith whose principal business was that of loaning money. Under the undisputed proof insured was a collector for Keith, "that is what he was employed to do." But that was not the extent of his authority, as disclosed by the proof, with particular reference to the testimony of Keith himself, who states: "Mr. Bottoms made loans to my customers and he also made new loans; he made loans at any time he saw fit; I left that entirely up to him: * * * Mr. Bottoms' business was to look after my business, and he looked after it just like I did. His business was to look after my loan business, and to loan and to collect. * * * It was the general in-

structions to the collectors that if they didn't see the man to leave word for them or for him to come to the office. All of the collectors were authorized that if a man was unable to pay on a certain date to extend the date for him. * * * If Mr. Bottoms found a man out on his rounds that wanted to borrow money, and he wanted to lend it, Mr. Bottoms would lend it to him. If a man's account came due, and Mr. Bottoms went to see him, and the man wasn't able to pay, Mr. Bottoms could extend his time, just like I did. In other words, these collectors conducted my business just like I did." These extracts from the testimony of Keith will suffice to demonstrate insured's character of work and the extent of his authority, which appears to have been co-extensive with that of his principal. The foregoing testimony is without conflict.

True plaintiff offered proof tending to show Keith gave instructions that the collectors tell the debtor, or, if another expression be preferred, deliver a message to the debtor, that if he did not pay a garnishment against his wages would be issued, or that he report to Keith's office. But these messages constituted but a mere incident to the business of the collectors, which related solely to the loan and collection of money. And the mere deliverance of such incidental messages could have no effect to change such an agent with such authority as shown into a mere messenger boy.

In nearly all relations of life, personal, business, and political, messages are delivered by one to another. In the latter class (political) an illustration comes to mind: The Governor is provided with a private secretary, and on innumerable occasions he must of course deliver a message from the Governor to others having business with the state, but no one would for a moment make reference to such an official as a messenger to the Governor. On the contrary, by express provision of statute (section 764, Code 1923), the Governor is furnished a messenger whose duties are purely ministerial. State ex rel. v. Smith, Auditor, 187 Ala. 411, 65 So. 942. Illustrations might be multiplied, but we deem further discussion unnecessary.

To come within the classification of "other messenger boy" as used in the policy clause hereinabove set out the insured must have been one who was a mere "bearer and communicator of the will of his superior," Keith. But under the undisputed proof the insured was his collector with full authority to transact Keith's business as did Keith himself, exercising judgment and discretion, and with the deliverance of any messages a mere incident thereto.

We are constrained to hold, therefore, that the death of the insured, under the undisputed proof, was not such a risk as came within the policy's protection, and that the affirmative charge requested by defendant should have been given.

The judgment is accordingly reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.