752 So.2d 514 (1999)
ALABAMA EDUCATION ASSOCIATION
v.
Carmen BLACK.
2980919.
Court of Civil Appeals of Alabama.
November 12, 1999.
*515 Joel E. Dillard of Baxley, Dillard, Dauphin & McKnight, Birmingham; and Sam Heldman of Gardner, Middlebrooks, Gibbons & Kittrell, Birmingham, for appellant.
W.L. Williams, Jr., Birmingham, for appellee.
YATES, Judge.
Carmen Black sued the Alabama Education Association ("AEA") on January 16, 1997, alleging a breach of contract, seeking a recovery under the theory of quantum meruit, and alleging an intentional interference with contractual relations. The trial court denied AEA's motions to dismiss and for summary judgment and the case proceeded to trial. At trial, Black moved the court to amend her complaint to conform to the evidence, in order to add a claim alleging fraud. The court denied that motion. AEA moved the court to amend its answer to conform to the evidence, in order to add the affirmative defense of release.[1] Both parties moved the court for a preverdict judgment as a matter of law ("JML").[2] AEA moved the court for a preverdict JML as to the claim alleging a breach of contract, the claim alleging intentional interference with contractual relations, and the claim for punitive damages. The court granted AEA's motion as to the claim alleging intentional interference with contractual relations and the claim seeking punitive damages; however, it denied the motion as to the breach-of-contract claim. Black moved the court for a preverdict JML as to the breach of contract claim. The court granted the motion *516 and entered a judgment in favor of Black for $5,493.24. AEA appeals, following the denial of its postjudgment motion.
Black was a nontenured teacher employed by the Birmingham Board of Education ("Board"). She was a member of the AEA. The AEA is an organization consisting of approximately 75,000 teachers, retired teachers, and education support personnel. Dr. Joe Reed, the associate executive secretary of the AEA, testified that the AEA lobbies on behalf of its members and works to improve the educational system through the political process. Dr. Reed supervises and coordinates AEA's legal-service program. He stated that one function of the AEA is to hire attorneys to represent its members in employer-employee relations.
In June 1991, the Board notified Black that it was not going to renew her teaching contract for the 1991-92 school year. Black contacted the AEA and requested it to provide her with an attorney to represent her in a lawsuit against the Board. After reviewing her application for legal assistance, Dr. Reed wrote Black a letter on June 11, 1991, informing her that the AEA was denying her application for assistance. The letter stated that because she was a probationary employee the Board could "nonrenew" her contract without providing her any reasons and that unless she could show some constitutionally impermissible reason for the Board's action she would have no legal recourse. The letter also informed Black that should she choose to employ a private attorney and pursue her case against the Board and was reinstated by a court to her employment, the AEA would "reimburse [her] for legal fees, not to exceed $60 an hour, plus court costs."
Black contacted Dr. Reed by telephone after receiving his June 11 letter, to ask him to reconsider the denial of her application. Dr. Reed responded to Black on July 9, 1991, with the following letter:
"This letter comes as a follow-up to our previous telephone conversation wherein I advised you that I would reevaluate your application for assistance and support. Please be advised that I, along with two other staff attorneys, have thoroughly reviewed your application and have concluded that this matter cannot be won in a court of law. Therefore, we will not be able to provide legal assistance to you.
"As set out in my letter to you dated June 11, 1991, if you decide to pursue your case and employ private counsel and are successful in being reinstated in a court of law, the AEA will reimburse you for legal fees, not to exceed $60 an hour, plus court costs.
"Again, I regret this very much; however, we do not feel your case can be won in a court of law."
Black testified that after receiving Dr. Reed's letters she set out to obtain private counsel in order to pursue her case against the Board. She testified that she spoke with several attorneys about taking her case; however, she said, she was unable to afford their services. Eventually, she was referred to David Sullivan, an attorney experienced in handling AEA-related cases. Sullivan initially refused to take Black's case; however, she persisted in her attempts to convince him to take the case. Finally, after three years, Sullivan agreed to take Black's case and he sued the Board.
On October 26, 1994, after the case had been filed, Sullivan wrote a letter to Dr. Reed informing him that Black had sued the Board and requesting that AEA reconsider its decision not to provide her with legal assistance and asking that he be permitted to continue to represent Black, at AEA's expense. The AEA did not respond to Sullivan's letter; therefore, Black and Sullivan entered into a contingency-fee agreement whereby Black would pay Sullivan 40% of any monetary recovery she received from the Board. Black settled her lawsuit against the Board in February 1996. In the settlement, Black received *517 tenure, credit for sick days for four years, retirement credit, and $100,000 in damages for mental anguish. The Board also reimbursed Black approximately $2,336 for certain litigation expenses, including copying charges and costs of depositions. The Board also reimbursed Black court costs not to exceed $500.
On March 20, 1996, Sullivan wrote Dr. Reed and informed him that Black had been successful in her lawsuit and that she had been reinstated as a tenured teacher with the Board. Sullivan also submitted an itemized statement of his hourly charges and expenses incurred in the litigation and requested payment of these fees in accordance with Dr. Reed's letter of July 9, 1991. The statement indicated that Sullivan had expended 224.20 hours in litigating the case on behalf of Black. Dr. Reed responded by letter on April 29, 1996, telling Sullivan that he would need additional information before he could make a determination regarding the attorney fee. Dr. Reed requested a copy of all pleadings and motions that had been filed. Black made several inquiries to AEA regarding the payment of Sullivan's fees and expenses. On June 27, 1996, Dr. Reed responded to Black's inquiries, informing her that the AEA was currently analyzing Sullivan's charges. Dr. Reed assured Black that AEA was going to reimburse her for her "reasonable and customary" fees and expenses. Dr. Reed further informed Black that some of Sullivan's hours appeared to be excessive and that as soon as the audit was complete the AEA would pay the "reasonable and customary" rate for the case. Black responded to Dr. Reed's letter on July 3, 1996, criticizing Dr. Reed for concluding that some of the hours submitted by Sullivan were excessive after the AEA had concluded that her case was unwinnable and refused to provide her with legal assistance. On August 22, 1996, Dr. Reed responded to Black by letter, informing her that after reviewing the records in the case, the AEA would reimburse her $11,985 as a reasonable attorney fee. Dr. Reed stated in the letter that anything over this amount would be excessive. Dr. Reed enclosed a check in the amount of $11,985, which was 25% less than the $15,980.65 bill Sullivan had submitted for fees and expenses incurred. On September 20, 1996, Black wrote a letter to Dr. Reed requesting that the AEA pay her $3,995.65, which represented the balance of the amount owed to Sullivan. Dr. Reed responded on December 2, 1996, stating that AEA policy requires it to reimburse only for a "reasonable and customary" attorney fee and that he was satisfied beyond a doubt that the $11,985 that had been paid was fair and just. He informed Black that the AEA would provide no more reimbursement.
The AEA argues on appeal that the court erred in denying its preverdict JML as to the breach-of-contract claim; in the alternative, it contends that there was at least an issue of fact that existed that precluded the granting of Black's preverdict JML. Our supreme court has stated:
"When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Regarding questions of fact, the ultimate question is whether the non-movant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. For actions filed after June 11, 1987, the nonmovant must present substantial evidence in order to withstand a motion for a JML. A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling."
*518 Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 974-75 (Ala.1998) (citations omitted). In order to prevail on a breach-of-contract claim, a plaintiff must prove: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Id. at 975.
The AEA argues that the settlement-and-release agreement entered into between Black and the Board bars this current lawsuit. The AEA relies upon the following provision of the settlement agreement:
"Black ... agrees to ... release, and forever discharge and covenant not to sue the Defendants ... or any other entities with respect to any and all claims ... which Black now has, or any claims whatsoever which may hereafter arise or accrue on account of the events, circumstances, or occurrences related to Black's employment with the Board or related to Black's efforts to obtain employment with the Board through the date of this agreement...."
Our supreme court has stated:
"[U]nnamed third-parties, referred to in the release as `any and all parties' or by words of like import, who have paid no part of the consideration and who are not the agents, principals, heirs, assigns of, or who do not otherwise occupy a privity relationship with, the named payors, must bear the burden of proving by substantial evidence that they are parties intended to be released, i.e., that their release was within the contemplation of the named parties to the release."
Pierce v. Orr, 540 So.2d 1364, 1367 (Ala. 1989). The AEA failed to present substantial evidence indicating that the parties intended to release it. It is clear from the evidence that neither the AEA nor any claim against the AEA was within the contemplation of the parties at the time the release was executed between Black and the Board. Thus, Black's breach-of-contract claim against the AEA is not barred by the release.
In granting Black's preverdict JML the court stated:
"I am going to grant the plaintiff's motion for judgment as a matter of law as to the contract claim based upon the law of the State of Alabama and the uncontradicted evidence in this case as a matter of law.... It's my specific holding that there was a contract, and that the defendant failed to live up to its end of the contract. Or in other words, it's my finding the defendant breached the contract. The defendant may have thought that it was reserving the right in this letter to pay what it deemed to be reasonable and customary, but that's not what the contract said. The contract is clear and unambiguous and it's my holding that as a matter of law that the plaintiff is due to recover the sum of $3,995 for the defendant's breach of contract."
The agreement at issue states: "[I]f you decide to pursue your case and employ private counsel and are successful in being reinstated in a court of law, the AEA will reimburse you for legal fees, not to exceed $60 an hour, plus court costs." The AEA contends that the court erred in failing to construe the agreement to require the reimbursement of only those fees and expenses that are "reasonable and customary."[3] The AEA argues that a contract that provides for the payment of another's attorney fee should be construed to require only the payment of a reasonable fee, even though the contract does not contain specific language that speaks to the reasonableness of the amount of the fee claimed. Black contends that the AEA breached the plain and unambiguous terms of the agreement by arbitrarily reducing *519 by 25% the amount of fees and expenses submitted by Sullivan.[4]
The court determined that the agreement was clear and unambiguous and that the AEA failed to preserve in the agreement the right to reimburse Black for only those fees that were reasonable and customary. Whether a contract is ambiguous is a question of law for the trial court. Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184 (Ala. 1992). A court interpreting a contract will give the words of the contract their plain and ordinary meaning. Id. Further, it is presumed that the parties intended to make a reasonable contract. Industrial Mach., Inc. v. Creative Displays, Inc., 344 So.2d 743 (Ala.1977).
We conclude that the court erred, as a matter of law, in not construing the contract to require the reimbursement of only a reasonable attorney fee. In Alabama, where there is an agreement to pay an attorney fee and the agreement does not speak specifically to the reasonableness of the fee, a "reasonable" fee will be inferred. See Twickenham Station, Inc. v. Beddingfield, 404 So.2d 43 (Ala.1981); Selman v. Bryant, 261 Ala. 53, 72 So.2d 704 (1954); Hamilton v. Burgess, 233 Ala. 4, 170 So. 348 (1936); and McGhee v. Importers & Traders Nat'l Bank, 93 Ala. 192, 9 So. 734 (1891), overruled in part on other grounds by Noble v. Gilliam, 136 Ala. 618, 33 So. 861 (1903). Public policy requires that an element of reasonableness be required under these circumstances; otherwise, agreements that do not specifically speak to the reasonableness of an attorney fee would provide a party with a blank check.
The AEA next argues that it was not obligated under the agreement with Black to reimburse her for her expenses incurred during the litigation with the Board, and it further contends that Black is not entitled to reimbursement of those expenses, because she had previously been reimbursed for those expenses by the Board. The Board paid Black approximately $2,336 in litigation expenses and costs not to exceed $500, in the settlement agreement between those two parties. Sullivan submitted to the AEA for reimbursement the same $2,336 in litigation expenses, plus $193 in court costs. The trial court's award of $5,493.24 to Black represented the unpaid balance of the charges submitted by Sullivan to AEA, plus interest. That amount necessarily included the $2,336 in expenses and $193 in court costs previously paid by the Board. We conclude that the court's judgment was erroneous to the extent that it included the amounts for expenses and court costs, because it allowed Black an impermissible double recovery as to those amounts.
Accordingly, we must reverse the award of damages and remand the case for the trial court to determine whether the number of hours submitted by Sullivan was a reasonable number. Additionally, on remand, should the court find that Black is entitled to further reimbursement from the AEA, the award should not include moneys for expenses and costs that have previously been paid by the Board.
The judgment is affirmed to the extent it held the AEA liable. Otherwise, it is reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.
NOTES
[1] We cannot determine from the record whether the trial court affirmatively granted or denied the union motion to amend its answer. Nonetheless, we conclude that the motion was due to be granted because the issue was tried by the implied consent of the parties. Black introduced into evidence a settlement-and-release agreement she had reached with the Birmingham City Board of Education. The record indicates that testimony was taken with regard to the settlement-and-release agreement. Further, Black did not object at trial when the union moved to amend its answer. Rule 15(b), Ala. R. Civ. P., provides, in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Implied consent can be inferred from an opposing party's failure to object to introduction of evidence raising the disputed issue initially. International Rehabilitation Assocs., Inc. v. Adams, 613 So.2d 1207 (Ala. 1992). Implied consent may also be inferred when the opposing party himself offers evidence relative to the issue. Id. Accordingly, we conclude that the issue of release was tried by the implied consent of the parties.
[2] Effective October 1, 1995, Rule 50, Ala. R. Civ. P., was amended to rename motions for directed verdict and motions for judgment notwithstanding the verdict as motions for judgment as a matter of law ("JML"). We will use the amended terminology, and will refer to motions made at the conclusion of the plaintiff's case or at the conclusion of the evidence, as motions for preverdict JML; motions made after the return of a verdict will be referred to as postverdict motions for JML.
[3] The AEA does not argue that the court erred in finding the existence of a contract to pay Black's attorney fee; only that it erred in its construction of the agreement.
[4] We note that the dispute does not involve the hourly rate of pay. The agreement clearly specifies a rate of $60 per hour. The dispute arises over the reasonableness of the number of hours submitted.