[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 366 
On July 1, 1997, Steve Glover ("the landlord") and Herbert Haar ("the tenant") entered into a lease concerning commercial property. The lease term was for five years, from September 1, 1997, through September 1, 2002. The total amount of rent due under the lease was $102,000, payable in 60 installments of $1,700 that were due by noon on the first day of each month. The lease required the tenant to pay $3,400 — the first and last months' rent — in advance; the tenant complied with this provision. Additionally, the lease provides for a $100 per month sign fee and a $100 per month fee for common-area maintenance ("CAM"). There are no late-fee provisions regarding the sign fee or the CAM fee.
In April 2001, the tenant paid $1,900, which accounted for his rent and both the sign fee and the CAM fee for that month. The payment was received by the landlord on April 30, 2001, 29 days late. Pursuant to the lease, a late charge of $290 accrued as a result of the late payment. In May 2001, the tenant included a note with his rent payment to the landlord. The note indicated that the tenant wanted to "cancel" both the sign fee and the CAM fee. The tenant included a check in the amount of $1,700 for the rent due, but he did not include payment for either the sign fee or the CAM fee.
From May 2001 until August 2002, the tenant paid only $1,700 per month to cover his rent obligation. The tenant did not pay the $290 late fee from April 2001. The tenant also did not pay the sign fee or the CAM fee from May 2001 through August 2002.
On August 21, 2002, the landlord filed a complaint against the tenant, alleging that the tenant had failed to pay rents and fees due under the terms of the lease. The matter was tried on March 28, 2003, and the trial court entered a judgment for the landlord on June 4, 2003; the trial court assessed the landlord's damages at $49,630, and it reserved judgment on the issue of attorney fees. On June 22, 2003, the trial court awarded the landlord attorney fees in the sum of $10,000. On July 2, 2003, the tenant filed a motion to alter, amend, or vacate the judgment under Ala. R. Civ. P. Rule 59. The tenant's motion was denied by operation of law on September 30, 2003. See Rule 59.1, Ala. R. Civ. P. On November 6, 2003, the tenant timely filed his notice of appeal.[1] This case was *Page 367 
transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
 "Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless `found to be plainly and palpably wrong.' `The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.'"
Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,608 So.2d 375, 378 (Ala. 1992) (quoting Clark v. Albertville NursingHome, Inc., 545 So.2d 9, 13 (Ala. 1989)) (citation omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981). "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996).
"However, the ore tenus rule does not extend to cloak a trial judge's conclusions of law, or incorrect application of law to the facts, with a presumption of correctness. As this Court has held, `when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment.'" Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala. 1999) (quoting Griggs v. Driftwood Landing, Inc.,620 So.2d 582, 586 (Ala. 1993)). In Alabama, when the terms of a contract are unambiguous, the construction of the contract is a question of law for the court. Colonial Bank of Alabama v. Coker,482 So.2d 286 (Ala. 1985). "A court interpreting a contract will give the words of the contract their plain and ordinary meaning. . . . Further, it is presumed that the parties intended to make a reasonable contract." Alabama Educ. Ass'n v. Black,752 So.2d 514, 519 (Ala.Civ.App. 1999).
 I.
The tenant argues that the trial court's judgment in the amount of $49,630 is not supported by the evidence. The lease provides, in regard to rent, as follows:
 "The minimum rental for the term of this lease is [$]102,000.00 payable in 60 equal successive monthly installments of [$]1700.00 each for the period of 5 yrs. Tenant, concurrent with its execution of this lease, hereby deposits with the Landlord the sum of [$]3400.00, the receipt of which is hereby acknowledged, which shall be applied to the first month's rent and the last month's rent."
The only provision in the lease that concerns late fees states:
 "Monthly installments of rent shall be due and payable periodically, as scheduled herein after [sic], payable to [the landlord]. . . . If any installment is not paid within 10 days of due date, a late fee of $10.00 per day will be added until payment in full is made."
There are no other late-fee provisions in the lease. The sign fee and the CAM fee appear in separate sections and under different headings in the lease after the late-fee provision regarding rent. The provisions of the lease are not ambiguous. The plain meaning of the provision regarding *Page 368 
late fees makes the late fees applicable only to monthly rent installments.
The landlord admitted that the tenant had paid his $1,700 monthly rent installments for each month of the lease. The tenant paid the April 2001 rent 29 days late and is therefore subject to a $290 late fee for that installment. There is evidence that the rent installment for May 2001 was also late. The tenant's letter dated May 23, 2001, "canceling" the sign fee and the CAM fee indicated that a $1,700 rent check was enclosed. However, the record is devoid of the date on which the check was received by the landlord or the amount of the late fee for that month.
The tenant paid a $100 per month sign fee for the first three and one-half years of the lease. The sign fee is provided for in the special-provisions section of the lease. The applicable provision reads as follows:
 "Signs. Landlord will allow one sign to be erected on the rental unit in a pre-designed area. Tenant also may erect a sign on the sign marque [sic] as long as it conforms to specifications. . . . The cost of lighting the sign on the marque [sic] is $100.00 per month."
The language in the provision is permissive. It provides that the tenant may, rather than shall, erect a sign and that the landlord will "allow" this. In a letter delivered with his May 2001 rent check, the tenant informed the landlord that he no longer wished to pay the sign fee. The landlord, nonetheless, included a $100 sign fee in his calculation of amounts due through August 2002. Under the provision in the lease relating to the sign fee, the tenant only has to pay the sign fee if he elects to have a lighted sign. The landlord asserted that the tenant owed him $1,600 — 16 months' worth of sign fees.
 "In order to establish that a breach of contract has occurred, a plaintiff must prove: `(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'"
Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 975 (Ala. 1998) (quoting Southern Med. Health Sys., Inc. v. Vaughn,669 So.2d 98, 99 (Ala. 1995)). It is undisputed that the tenant informed the landlord that he no longer wished to pay the sign fee in late May 2001. The landlord did not produce any evidence regarding damages in relation to the sign fee. There is no evidence in the record to suggest whether or not the landlord provided power to light a sign after May 2001. Therefore, the landlord failed to produce sufficient evidence to recover the sign fee for the months after May 2001; however, the tenant is liable for the $100 sign fee for May 2001.
The CAM-fee provision is in an addendum to the lease. The addendum is a handwritten list of 10 items, number 10 reading: "$100 month CAM." Both parties testified that this provision related to the landlord's providing common-area maintenance. The tenant testified that he saw someone pick up trash in the parking lot occasionally. The landlord testified that he had provided common-area maintenance. The trial court could have concluded that the CAM fee was part of the tenant's obligations under the lease. The tenant is liable for the CAM fee for every month under the lease. However, the CAM fee is not subject to a late fee. Therefore, the tenant is liable for $1,600 for the CAM fee for 16 months — May 2001 through August 2002.
The tenant also points to a miscalculation in the damages computations as a reason that the judgment is not supported by the evidence. The trial court entered a judgment in the amount of $49,630, based *Page 369 
on a chart that the landlord introduced into evidence. The amount of the judgment is incorrect due to an obvious mathematical error. The judgment was derived by adding the amount-due column total to the cumulative-late-charge column total on the chart. The cumulative-late-charge column total on the chart was derived by adding all of the entries in the cumulative-late-charge column to one another. However, the amount of the last entry before the "total" in the cumulative-late-charge column is the cumulative amount of the late fees the landlord believed he was owed. Astonishingly, neither the parties nor the judge corrected this specific error. Counsel for the tenant did, however, vehemently object to the admission of the chart at trial, in the Rule 59 motion to alter, amend, or vacate, and in his brief to this court; he argues that the chart contains errors and mistakes and that the maximum liability of the tenant is $8,370. This amount equals the amount-due total — $3,200 — plus the amount reflected in the last entry of the cumulative-late-charge column — $5,170.
When there are mathematical errors in the calculation of a recovery, "[i]t is axiomatic that we are authorized to correct such mistakes and adjust the recovery accordingly." Moody v.State, 355 So.2d 1116, 1120 (Ala. 1978). The damages are based on an obvious mathematical error and an improper application of the law to the facts. The trial court's judgment in the amount of $49,630 is clearly erroneous and is, therefore, reversed.
 II.
Finally, the tenant argues that the trial court abused its discretion by awarding the landlord a $10,000 attorney fee. The contract provides for the recovery of a reasonable attorney fee by the prevailing party in any lawsuit to enforce rights in connection with the lease. "The reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court." Lanier v. Moore-Handley, Inc., 575 So.2d 83, 85 (Ala. 1991). A trial court should consider several factors when awarding attorney fees:
 "(1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the limitations imposed by the client or by the circumstances."
Anderson v. Lee, 621 So.2d 1305, 1307 (Ala. 1993).
The handwritten entry of judgment on June 22, 2003, reads:
 "Attorney fees are awarded to the [landlord's] attorney in the sum of $10,000, which sum represents 20% of the judgment."
Because we reverse the $49,630 judgment in the landlord's favor, we must reverse the award of attorney fees because the trial court clearly based the award on the amount of the judgment.
We reverse the judgment and remand the cause with instructions to correct the mathematical error in the judgment, to determine the amount of the May 2001 late fee, and to adjust the attorney-fee award. *Page 370 
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
YATES, P.J., and THOMPSON and MURDOCK, JJ., concur in the result, without writing.
[1] The first hearing on the tenant's Rule 59 motion was scheduled for September 8, 2003. However, on August 20, 2003, the trial court rescheduled the hearing, due to scheduling conflicts, for September 29, 2003 — the 89th day after the filing of the tenant's Rule 59 motion. The landlord's counsel made an oral motion to the court to continue the hearing; however, there is no indication that the landlord requested that the 90-day period for ruling on the Rule 59 motion be extended. Although the tenant made a motion on the record to extend the time limit for ruling on the motion past 90 days, that motion was filed after the expiration of the 90-day period. Therefore, the Rule 59 motion was denied by operation of law on September 30, 2003. The notice of appeal was timely filed on November 6, 2003, the 37th day after the denial of the motion.