I do not believe that paragraph 18 of the marriage settlement agreement incorporated into the judgment of divorce is ambiguous. Therefore, I must dissent.
The main issue in this appeal is whether paragraph 18 is ambiguous. "The words of an agreement are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract." Vainrib v.Downey, 565 So.2d 647, 648 (Ala.Civ.App. 1990). We review a trial court's determination that a contract is ambiguous de novo.Winkleblack v. Murphy, 811 So.2d 521 (Ala. 2001).
Paragraph 18 of the marriage settlement agreement is unambiguous, and the trial court's judgment is, therefore, due to be reversed. Paragraph 18 provides:
 "18. The collective balances existing on the Husband's tax-deferred retirement/profit sharing accounts, [three accounts listed], along with the balances on deposit in the wife's tax-deferred retirement/profit sharing accounts, [two accounts listed] shall be determined as of June 30, 2001, and the Wife is hereby awarded a sum equal to forty-five percent *Page 138 (45%) of the collective total minus the current balances on her above identified accounts, so that the Husband receives fifty-five percent (55%) and the wife receives forty-five percent of the total amount. . . . The Circuit Court shall expressly reserve jurisdiction to enter all necessary and required orders, including a QDRO [Qualified Domestic Relations Order], to perfect the transfer of funds. Counsel for the [husband] shall prepare all necessary orders to perfect the agreed transfer of funds."
(Emphasis added.)
The agreement awards the wife "a sum equal to" 45% of the value of the retirement accounts on June 30, 2001, and provides the method by which that sum is to be derived. Paragraph 18 also contemplates that the retirement accounts at issue may be the source of those funds, but it does not require that they be the source. The marriage settlement agreement, which the trial court incorporated into its final judgment of divorce, "expressly reserve[s] jurisdiction to enter all necessary and required orders, including a QDRO [Qualified Domestic Relations Order], to perfect the transfer of funds." A Qualified Domestic Relations Order ("QDRO") is permissible, but it is not required by this language. A QDRO would be required to transfer or disburse "a sum" from the husband's retirement accounts to the wife or to the wife's accounts. However, the court could use its contempt powers to enforce its judgment requiring the husband to pay a certain "sum" derived by the mathematical calculations in paragraph 18, which I will now examine.
Paragraph 18 requires that the wife receive "a sum equal to forty-five percent (45%) of the collective total minus the current balances on her above identified accounts, so that the Husband receives fifty-five percent (55%) and the wife receives forty-five percent of the total amount." The words of the judgment, accorded their ordinary meaning, are not susceptible to different interpretations. The second clause of the first sentence of paragraph 18 ("the second clause") outlines the mathematical calculation that is to be applied to the values of the parties' collective retirement account balances as of June 31, 2001. The third clause of the first sentence of paragraph 18 ("the third clause") expresses the intent of the parties, explicating the effect of the mathematical calculation outlined in the first clause. "General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists." Ryan WarrantyServs., Inc. v. Welch, 694 So.2d 1271, 1273 (Ala. 1997).
The husband has three retirement accounts with three separate banking institutions: Prudential Financial, Regions Bank, and Fidelity Investments. The wife has two retirement accounts with two separate banking institutions: Prudential Financial and T.S. Rowe. The husband entered into evidence Defendant's Exhibit 2, which stated the value of his three accounts as of June 30, 2001. The wife entered into evidence several plaintiff's exhibits stating the value of all five of the accounts. The information contained in those exhibits is summarized below.
 Accounts Balance as of Balance as of June 30, 2001, June 30, 2001, according to according to husband wife
Husband's Accounts *Page 139 
 1. Prudential $528,410.00 $528,409.96 2. Regions $131,318.00 $131,320.24 3. Fidelity $ 56,736.00 $ 56,736.32
Husband's Total $716,464.00 $716,466.52
Wife's Accounts
 1. Prudential $ 10,357.00 $ 10,357.00 2. T.S. Rowe $ 888.92 $ 888.92
Wife's Total $ 11,245.92 $ 11,245.92
 Collective Total/ $727,709.92 — $727,712.44 — Total Amount $ 11,245.92 = $ 11,245.92 = $716,464.00 $716,466.52
After ascertaining the "collective total" of all the retirement accounts and the "current balances on her above identified accounts"[6] one applies the mathematical formula laid out in paragraph 18 of the marriage settlement agreement. Using the husband's figures, the wife is entitled to a sum of $322,408.80.[7] Using the wife's figures, she is entitled to a sum of $322,409.93.[8]
The third clause merely reiterates the result of the mathematical calculations provided for in the second clause and clarifies the intent of the parties. The third clause provides: "so that the Husband receives fifty-five percent (55%) and the wife receives forty-five percent of the total amount." Depending on which parties values are used to calculate the total amount, the husband received $394,055.20 or $394,056.58 and the wifeshould have received $322,408.80 or $322,409.93.[9]
Interpretations of unambiguous marriage settlement agreements, like unambiguous contracts, are questions of law. See Ex parteAgee, 669 So.2d 102 (Ala. 1995); and Stacey v. Saunders,437 So.2d 1230, 1233 (Ala. 1983). Further, it is presumed that the parties intended to make a reasonable contract. Haar v. Glover,897 So.2d 364 (Ala.Civ.App. 2004); and Alabama Educ. Ass'n v.Black, 752 So.2d 514, 519 (Ala.Civ.App. 1999).
When a contract contains unambiguous language, "and but one reasonable construction of the contract is possible, it must be expounded as made, for the courts are not at liberty to make new contracts for the parties." Life Cas. Ins. Co. of Tennessee v.Bottoms, 225 Ala. 382, 383, 143 So. 574, 575 (1932). However,
 "[w]hen we find an agreement to be ambiguous, we must employ established *Page 140 
rules of contract construction to resolve the ambiguity found in the inartfully drafted document. Lowery v. May, 213 Ala. 66, 104 So. 5 (1925); Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718
(1908); 17A Am.Jur.2d Contracts § 337 (1991).
 "With a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract."
Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala. 1997).
The only possible ambiguity that could exist in paragraph 18 of the marriage settlement agreement is if the "collective total minus the current balances of [the wife's retirement] accounts" in the second clause of the sentence at issue is not accorded the same value as the "total amount" in the third clause. If the "total amount" is the total amount of all five of the accounts, rather than the "collective total minus the current balances of [the wife's retirement] accounts," then the husband would have received $400,240.45 or $400,241.84 and the wife would have received $327,469.46 or $327,470.59.[10] If this were the case, then the second clause and the third clause would not produce the same totals, and there would therefore be an ambiguity. However, rather than applying a reading that would destroy the contract, there is a valid construction, which the court should apply, that allows the two clauses to interact in harmony. Voyager Life Ins. Co. v. Whitson, 703 So.2d at 946.
The main opinion misplaces its reliance on several cases affirming a trial court's interpretation or clarification of its prior judgment. In Filer v. Filer, 502 So.2d 698 (Ala. 1987), the divorce judgment provided that the house was to be placed on the market at the price of $150,000. Additionally, the judgment provided for the reimbursement of normal costs to the husband before the determination of the sum due the wife. In Filer, the court relied on Mayhan v. Mayhan, stating:
 "`The agreement authorized an equal division of their equity in the property should the house be sold and no alteration as to such provision was made by the latest judgment. The agreement was ambiguous since it did not state how, when, by whom or in what manner the house would be sold, and the judgment clarified such matters.'"
Filer v. Filer, 502 So.2d at 700 (quoting Mayhan v. Mayhan,395 So.2d 1022, 1023 (Ala.Civ.App. 1981)). In this case, the agreement provides a specific date of valuation and that the husband's counsel shall prepare the necessary orders, and, by its language, it leaves open the possibility of several sources of the funds.
In Garris v. Garris, 643 So.2d 993 (Ala.Civ.App. 1994), this court affirmed a trial court's clarification and enforcement of its judgment. In Garris, "[t]he judgment did not specifically address the tax and penalty consequences of an early withdrawal of such funds. Upon withdrawing the funds, a ten percent penalty and tax liability in excess of fourteen thousand dollars was incurred." Garris, 643 So.2d at 994. The trial court clarified its original judgment, holding that the parties were jointly liable for the penalty and tax consequences. This court affirmed, stating: *Page 141 
 "In the case sub judice, the original divorce judgment ordered the husband to liquidate the IRA [individual retirement account] assets, pay certain debts, and equally divide the remaining proceeds between the parties. Inherent in an equal division of the proceeds is the equal division of costs to obtain the `remaining liquid assets.' When the trial court subsequently entered a judgment against the wife for one-half of the taxes and penalties incurred, it `did no more than enforce the original judgment, as it was empowered to do.' Filer v. Filer, 502 So.2d 698, 701 (Ala. 1987)."
Garris, 643 So.2d at 995.
In this case, however, as discussed above, there is no need for a clarification. The judgment in the case at hand contemplated not only depreciation, but appreciation as well. The divorce judgment in this case avoided the problem in Filer, Mayhan, andGarris, supra, by specifying a date in regard to valuation.
Because I do not believe that paragraph 18 of the marriage settlement agreement is ambiguous, I believe that the trial court impermissibly modified the property settlement.
 "`A court cannot modify property provisions [in divorce judgments], except to correct clerical errors after 30 days from the final judgment.' Hamilton v. Hamilton, 647 So.2d 756, 759 (Ala.Civ.App. 1994). Further, `[b]arring fraud and duress, . . . a property settlement agreement incorporated into a divorce decree is final and not modifiable.' Mashatt v. Mashatt, 469 So.2d 607, 610 (Ala.Civ.App. 1985). Additionally, `divorce decrees are to be construed like other written instruments, and, if there is any uncertainty, the court must construe them so as to express the intent of the parties. Such intent can be derived from the provisions of the agreement.' Satterfield v. Satterfield, 419 So.2d 601, 603
(Ala.Civ.App. 1982)."
Ex parte Littlepage, 796 So.2d 298, 301 (Ala. 2001). I would, therefore, reverse the trial court's judgment and remand the case to the trial court with instructions to award the wife the sum of $322,409.93 plus the appropriate amount of postjudgment interest.[11]
[6] The "current balances on her above accounts" as of June 30, 2001, according to the wife totaled $11,245.92. The husband did not dispute that total on appeal.
[7] .45 × ($727,709.92-$11,245.92) = $322,408.80.
[8] .45 × ($727,712.44-$11,245.92) = $322,409.93.
[9]
 Husband's values $716,464.00 55% $394,055.20 45% $322,408.80
 Wife's values $716,466.52 55% $394,056.58 45% $322,409.93
[10]
 Husband's values $727,709.92 55% $400,240.45 45% $327,469.56
 Wife's values $727,712.44 55% $400,241.84 45% $327,470.59
[11] On appeal, the husband does not contest the figures that the wife uses to calculate the amount she is owed. He asserts only that she should bear part of the loss he has incurred. Therefore, we should award the wife the amount to which she would be entitled based on the values she entered into evidence at trial.